IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRISTOL TOWNSHIP** : | |
| 2501 Bath Road : | Civil Action No. |
| Bristol, PA 19007 : | |
| : | Jury Trial Requested |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **ROHM AND HAAS COMPANY** : | |
| 100 S Independence Mall W : | |
| Philadelphia, PA 19106, and : | |
| c/o CT Corporation System : | |
| 1515 Market Street, Suite 1210 : | |
| Philadelphia, PA 19102 : | |
| : | |
| **ROHM AND HAAS DELAWARE** : | |
| **VALLEY, INC.** : | |
| 100 S Independence Mall W : | |
| Philadelphia, PA 19106, and : | |
| c/o CT Corporation System : | |
| 1515 Market Street, Suite 1210 : | |
| Philadelphia, PA 19102; and : | |
| : | |
| **DOW CHEMICAL COMPANY** : | |
| c/o CT Corporation System : | |
| 1515 Market Street, Suite 1210 : | |
| Philadelphia, PA 19102 : | |
| : | |
| Defendants. : | |

**COMPLAINT**

**I.     Introduction and Nature of the Action**

1.    Plaintiff Bristol Township ("Plaintiff" or "Township"), by and through its

attorneys Curtin and Heefner LLP, brings this civil action to recover environmental

1

remediation costs and other damages for which Rohm and Haas Company, Rohm and Haas Delaware Valley, Inc., and Dow Chemical Corporation (together "Defendants") is liable.

2. Plaintiff seeks cost recovery and contribution pursuant to Sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), respectively, as amended, 42 U.S.C. §§ 9607 and 9613, for its environmental cleanup costs.

3. Plaintiff seeks cost recovery and contribution pursuant Sections 507 and 705 of the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. §§ 6020.507 and 6020.705.

4. Additionally, Plaintiff seeks compensation for damages resulting from Defendants' breach of contract, negligence, and public and private nuisances.

## II.   Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this action and Defendants pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 9607 and 9613(b).

6. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

7. This Court may also exercise diversity jurisdiction over any state law claims pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the jurisdictional amount.

8. Venue is proper in this district pursuant to Section 106(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9606(a) and 9613(b), and 28 U.S.C. § 1391(b) and (c), because

the claims arose and the threatened and actual releases of hazardous substances that gave rise to these claims occurred within this judicial district.

**III.   Parties**

9.   Plaintiff Bristol Township is a Pennsylvania municipality and First Class Township, established and existing under the laws of Pennsylvania, with a business address of 2501 Bath Road, Bristol, PA 19007.

10.   Defendant Dow Chemical Company ("Dow") is a Delaware corporation headquartered in Michigan and with a business address of 2200 W. Salzburg Road, P.O. Box 994, Midland, MI 48686, and which conducts business in Pennsylvania, with a registered agent in Pennsylvania of CT Corporation System, 1515 Market Street, Suite 1210, Philadelphia, PA 19102.

11.   Defendant Rohm and Haas Company ("Rohm and Haas" or "R & H") is a Delaware corporation that is a wholly-owned subsidiary of Dow and a successor in interest to Rohm and Haas Delaware Valley, Inc. ("Rohm and Haas DVI" or "R & H – DVI"), headquartered in Michigan and with a principle place of business at 2200 W. Salzburg Road, P.O. Box 994, Midland, MI 48686, and which conducts business in Pennsylvania, with a business address of a business address of 100 S Independence Mall W, Philadelphia, PA 19106.

12.   Defendant Rohm and Haas DVI is a Delaware corporation and a predecessor in interest to Rohm and Haas, headquartered in Michigan and with a principle place of business at 2200 W. Salzburg Road, P.O. Box 994, Midland, MI

48686, and which conducts business in Pennsylvania, with a business address of a business address of 100 S Independence Mall W, Philadelphia, PA 19106.

13. Defendant R & H - DVI and/or Rohm and Haas owned and operated the property on which the hazardous substances have been released.

14. Plaintiff is the current owner of a portion of said property.

**IV.   Factual Background**

SITE HISTORY AND LANDFILLING OPERATIONS

15. Beginning in 1917, Defendants, themselves or through their predecessors, owned and operated a manufacturing facility located in Bristol Township, Pennsylvania, along the Delaware River.

16. The approximately 880-acre property included various laboratory operations and manufacturing operations. In addition to the developed areas, the property included marshes, woodlands, and other open space.

17. Defendants' operations involved producing a variety of compounds including hydrosulfites, Plexiglas, acrylate and methacrylate compounds, detergents and additives for hydraulic fluids, plastic, emulsions, and various pesticides.

18. Within the property, Defendants operated a 120–acre landfill, which is the "Site" or "Facility."

19. "From 1917 to 1975, R & H used the Site for disposal of general refuse, process wastes, and offgrade products from R & H's plastics and chemical manufacturing

plants." *United States v. Rohm & Haas Co.*, 2 F.3d 1265, 1268 (3d Cir. 1993), *overruled by United States v. E.I. Dupont De Nemours & Co. Inc.*, 432 F.3d 161 (3d Cir. 2005).[1]

20. In 1963, however, Defendants sold 14.5 acres of the Site to the Bristol Township Authority ("BTA") for the BTA to operate a Waste Water Treatment Plant ("WWTP").

21. Defendants continued to operate the landfill on the surrounding land until 1975.

22. Defendants buried the waste in trenches or layers; drums and other containers were mostly crushed at the time of disposal.

23. "In 1981, R & H–DVI notified EPA that 309,000 tons of waste were disposed of at the site including at least 4,600 tons of hazardous substances as defined by 42 U.S.C. § 9601(14)." *United States v. Rohm & Haas Co.*, 2 F.3d 1265, 1268 (3d Cir. 1993).

24. Peak dumping occurred between 1973 and 1975. United States Environmental Protection Agency ("EPA") records state that the landfill accepted 20,000–25,000 drums per year. The wastes included "lead dross, ethylene dichloride and trichloroethylene residues, Kydex hopper drainings, and wastes from the Petroleum Acryloid and Acryloid Coatings production areas." Resource Conservation and Recovery Act Record Of Decision ("ROD") at 73, attch. 2 at 2 (attached hereto as Exhibit 1).

---

[1] This Court "may take judicial notice of the contents of another Court's docket." *Orabi v. Attorney Gen.*, 738 F.3d 535, 537 (3d Cir. 2014).

2884964.1/56598

CLEAN UP BEGINS: RCRA CONSENT ORDER AND DECREE

25.   On February 6, 1989, Rohm and Haas and EPA entered into an Administrative Order on Consent under § 3008(h) of RCRA, 42 U.S.A. § 6928(h), ("AOC").

26.   "Under the AOC, Rohm and Haas DVI agreed to, *inter alia*, perform a Facility Investigation ('FI'), an evaluation of the nature and extent of any release of hazardous wastes from the Site, and a Corrective Measures Study ('CMS'), which is designed to develop and evaluate alternative cleanup remedies at the Site." *United States v. Rohm & Haas Co.*, 790 F.Supp. 1255, 1259 (E.D. Pa. 1992), rev'd, 2 F.3d 1265 (3d Cir. 1993) (emphasis added).

27.   Rohm and Haas agreed to perform these tasks on all portions of the Site, including those portions owned by the BTA. *United States v. Rohm & Haas Co.*, 790 F.Supp. 1255, 1259 (E.D. Pa. 1992), rev'd, 2 F.3d 1265 (3d Cir. 1993).

28.   As part of the remediation, "[i]n 1986–87, [Defendants] moved 11,700 cubic yards of waste and soil from the BTA portion of Landfill Area A to the Rohm and Haas . . . portion of Landfill Area A. The consolidation of waste onto the Rohm and Haas Company property was completed to accommodate a planned expansion of the BTA sewage treatment plant on the BTA property." ROD at 4.

29.   "Numerous hazardous substances have been found at the Site. The presence of approximately thirty CERCLA hazardous substances have been confirmed in groundwater monitoring wells." *United States v. Rohm & Haas Co.*, 790 F.Supp. 1255, 1257–58 (E.D. Pa. 1992).

30. The waste was so toxic that employees of the Bristol Township WWTP wore organic vapor monitors on their clothing during the excavation of the BTA property in 1986/87. ROD at 29.

31. Due to the WWTP buildings and pipes being built on top of part of the landfill, Defendants were unable to remove the contaminated material located under and around BTA buildings and pipes.

32. Therefore, in the ROD, EPA contemplated future remediation by Defendants when it included that "[i]f followup sampling of groundwater indicates releases from the inaccessible portions of the BTA portion of Landfill Area A contributing to the exceedance of the Media Protection standards, potential additional remedies will be evaluated for the BTA portion of Area A." ROD at 9.

WWTP EXPANSION PROJECT ENCOUNTERS HISTORIC CONTAMINATION

33. In 2009, Bristol Township terminated the BTA.

34. As a result of the termination of the authority, Bristol Township became the successor owner to BTA's assets.

35. In 2010, Bristol Township entered into a Consent Decree with EPA under the Clean Water Act ("CWA"), 33 U.S.C. §1251 et seq., that required the Township to expand the WWTP to accommodate increased amounts of sewerage.

36. On March 26, 2021, when the Township began soil testing during pre-construction, the Township encountered a layer of straw followed by a layer of malleable caulk-mastic material in the soil nearby the existing WWTP.

7

37. Finding contaminants in this area was a surprise because the area was not under or around existing pipes and structures.

38. Subsequent laboratory analysis identified historic contaminants including benzene, 2,4-dimethylphenol, triethylamine, acetone, carbon disulfide, ethylbenzene, toluene, 4-methyl-2-pentanone (MIBK), isoproprylbenzene, xylenes, methyl cyclohexane, and 2-butanone.

39. Subsequent sampling and lab analysis also found hazardous substance concentrations in the soils were so high that they indicated they would leach into groundwater if the soils came into contact with groundwater.  Laboratory testing indicated contaminants were present in groundwater at concentrations above PA DEP Act 2 Statewide Health Standards.

40. Given the Site's proximity to the Delaware River, the groundwater table is very close to the ground surface.

41. The wastes were found below the groundwater table, within the groundwater.

42. Because the contaminated soils were identified to be within the groundwater zone and to have soil properties conducive to leaching of the hazardous substances, the Township changed the WWTP expansion project to also include environmental remediation efforts.

43. The Township contacted EPA and Pennsylvania Department of Environmental Protection ("PA DEP") about its findings.

44. EPA informed the Township that Defendants remained responsible for the wastes.

45. The Township attempted to work with Defendants to remediate the environmental contamination, but Defendants have refused to take any remedial action and instead contends that no such action is required.

46. However, action is required because the groundwater is contaminated by the release of hazardous substances in the soil.

47. Therefore, any groundwater discharge from construction dewatering operations (the process by which contractors remove water from the ground before installing utilities and building a building's foundation) must be treated per CWA standards.

48. In addition, action was also required to remediate contaminated soil that was contributing to further groundwater contamination.

49. Placing the contaminated soil back into the ground, which has a high groundwater table due to its proximity to the Delaware River, would result in future contamination.

50. The discovery of these contaminants caused significant delays and increased costs to the expansion project because it required immediate remediation efforts by the Township.

51. As a result of efforts to clean up historic contamination, to date the Township has spent more than $2.8 million dollars in response costs.  Costs are continuing to be incurred.

52. On or about January 30, 2023, the Township sent Defendants a detailed explanation of the response costs.

53. The response costs include, among others, investigative costs, technical consultant fees, increased construction costs, and reasonable pre-litigation attorneys' fees and costs.

54. Defendants have not reimbursed the Township for any of its response costs as of the date of this filing.

## V.  COUNT 1: COST RECOVERY UNDER CERCLA § 107

55. Paragraphs 1 through 54 are realleged and incorporated herein by reference.

56. Defendants are "persons" within the meaning of Section 101(21) CERCLA.

57. The property is a "facility" within the meaning of Section 101(9) of CERCLA.

58. Defendants were "owners" and "operators" of a facility within the meaning of Section 107(a) of CERCLA.

59. Defendants were owners at the time of the hazardous substance disposal within the meaning of Section 107(a) of CERCLA.

60. Defendants were arrangers and transporters of the hazardous substance within the meaning of Section 107(a) of CERCLA.

61. Defendants were the generators of the hazardous substance within the meaning of Section 107(a) of CERCLA.

62. This Court previously found that Defendants' operations and productions resulted in the disposal of "hazardous substances" as defined in Section 101(21) of

10

CERCLA. *United States v. Rohm & Haas Co.*, 790 F.Supp. 1255, 1259 (E.D. Pa. 1992), *rev'd*, 2 F.3d 1265 (3d Cir. 1993).

63. The contamination found in and around the facility includes such hazardous substances.

64. At relevant times, there have been releases within the meaning of Section 101(22) of CERCLA of a hazardous substance into the environment at or from the Site.

65. As a result of the releases or threatened releases of hazardous substances at or from the Site, the Township has incurred and will continue to incur response costs within the meaning of Sections 101(25) and 107 of CERCLA to respond to the releases or threatened releases of hazardous substances at the Site.

66. Upon encountering contamination, the Township contacted PA DEP and EPA.

67. In 2004, PA DEP and EPA signed a Memorandum of Agreement to facilitate PA DEP's brownfield environmental cleanup program.

68. PA DEP addresses brownfield remediation through its Voluntary Cleanup Program under the authority of the Pennsylvania Land Recycling and Environmental Remediation Standards Act ("Act 2"), 35 P.S. Sections 6026.101 et seq.

69. PA DEP is also authorized by the EPA to address facilities "that are subject to, or potentially subject to, RCRA Section 3004(u) or 3008(h)."

70. In accordance with Act 2, and the PA DEP, the Township filed a Notice of Intent to Remediate ("NIR") with PA DEP on June 16, 2021.

71. Pursuant to Act 2, notice was also published in the Pennsylvania Bulletin on July 31, 2021. 51 Pa. Bull. 4122 (July 31, 2021).

72. Pursuant to Act 2, notice was also published in the *Bucks County Courier Times* on June 21, 2021.

73. The Township is complying with Act 2 requirements.

74. The response actions taken or to be taken at the Site are consistent with the National Contingency Plan ("NCP").

75. Pursuant to Section 107 of CERCLA, Defendant is liable to the Township for all response costs incurred and to be incurred by the Township in connection with the remediation.

## VI. COUNT 2: CONTRIBUTION UNDER CERCLA § 113

76. Paragraphs 1 through 75 are realleged and incorporated herein by reference.

77. The Township is entitled to contribution against Defendants pursuant to Section 113 of CERCLA.

## VII. COUNT 3: COST RECOVERY UNDER HSCA § 507

78. Paragraphs 1 through 77 are realleged and incorporated herein by reference.

79. The Pennsylvania Hazardous Substance and Control Act governs the contamination by hazardous substances.

80. Defendants are responsible persons under section 701 of HSCA.

81. Defendants caused a release of a hazardous substance.

82. Defendants caused a release or a substantial threat of release of a contaminant which presents a substantial danger to the public health or safety or the environment.

83. Section 1101 of HSCA declares "[a] release of a hazardous substance" to be a "public nuisance."

84. Pursuant to 507 of HSCA, a Pennsylvania municipality is entitled to recover costs for its remediation following the release of hazardous substances to a natural resource.

85. Defendants placed hazardous wastes into an unlined landfill beside the Delaware River and within soil with a groundwater table close to the ground surface.

86. The Delaware River is natural resource used by the public for drinking water and recreation, among other activities.

87. Based on groundwater testing, the hazardous wastes have leached out into the groundwater, which flows into the Delaware River.

88. The leaching has caused damage to a natural resource, which constitutes a public nuisance. 35 Pa. Stat. § 6020.1101.

89. Specifically to the Plaintiff, the waste contaminated the groundwater on its property.

90. As a result of the contamination, Plaintiff incurred increased costs to treat the water during construction of the new WWTP.

91. Also as a result of the wastes in the ground, Plaintiff incurred remediation costs to remove and dispose of the waste-containing soil.

92. Also as a result, its construction project was delayed and Plaintiff incurred increased construction costs.

93. Defendants are responsible for these remediation and construction costs.

## VIII. COUNT 4: CONTRIBUTION UNDER HSCA § 705

94. Paragraphs 1 through 93 are realleged and incorporated herein by reference.

95. Defendants are liable to the Township for contribution under Section 705 of HSCA.

## IX. COUNT 5: BREACH OF CONTRACT

96. Paragraphs 1 through 95 are realleged and incorporated herein by reference.

97. On February 6, 1989, Rohm and Haas DVI and EPA entered into an Administrative Order on Consent under § 3008(h) of RCRA, 42 U.S.A. § 6928(h).

98. "Under the AOC, Rohm and Haas DVI agreed to, inter alia, perform a Facility Investigation ('FI'), an evaluation of the nature and extent of any release of hazardous wastes from the Site, and a Corrective Measures Study ('CMS'), which is designed to develop and evaluate alternative cleanup remedies at the Site. Rohm and Haas DVI agreed to perform these tasks on all portions of the Site including those portions owned by Chemical Properties and BTA." *United States v. Rohm & Haas Co.*, 790 F.Supp. 1255, 1259 (E.D. Pa. 1992), *rev'd*, 2 F.3d 1265 (3d Cir. 1993).

99. When Defendants entered into the AOC, they specifically agreed to remediate BTA's property as part of fulfilling its duties under the RCRA COA.

100. Additionally, as evidence of this commitment, in the Record of Decision supporting the AOC, EPA noted that Defendants agreed that additional remediation would be required if the contaminated soil under and around the pipes and WTTP buildings caused contamination. "If followup sampling of groundwater indicates releases from the inaccessible portions of the BTA portion of Landfill Area A contributing to the exceedance of the Media Protection Standards, potential additional remedies will be evaluated for the BTA portion of Area A." ROD at 9.

101. The BTA and its successor owners are intended third-party beneficiaries of the agreement because the parties to the agreement had to remediate BTA property to fulfill the agreement terms.

102. On July 20, 2009, when the Township terminated the BTA, it became the successor owner of all BTA assets.

103. On September 10, 2010, the Township later entered into a Consent Decree with EPA that required the Township to expand its WWTP to accommodate Clean Water Act standards.

104. In preparation for the expansion, the Township began testing soil conditions on the WWTP property when it encountered Defendants' historic landfill material.

105. Subsequent laboratory analysis showed both soil and groundwater contamination.

106. The Township contacted Defendants about the remediation options resulting from Defendants' historic contamination.

107. The Township also contacted EPA.

108. When the Township contacted EPA, EPA informed the Township's consultants that Defendants were responsible for the historic waste.

109. On or about January 30, 2023, the Township provided notice to Defendant detailing the costs it incurred to remedy the historic contamination and resulting groundwater contamination.

110. Defendants have refused to take action or reimburse the Township for its remediation costs.

111. Defendants are liable for breaching its contract to provide environmental remediation at the property.

X. **COUNT 6: NEGLIGENCE**

112. Paragraphs 1 through 111 are realleged and incorporated herein by reference.

113. Under the AOC, Defendants were required to remove wastes except those under and around WWTP pipes and structures.

114. During pre-construction, the Township located wastes in soil areas not under or around WWTP pipes and structures but instead on other areas of the property.

115. The AOC was in part designed to remediate soils on Plaintiff's property.

116. Therefore, when Plaintiff began its WWTP expansion, it did not expect waste areas away from structures and pipes.

117. Plaintiff was unable to ascertain or discover that Defendants failed to remove the hazardous material from its property until it began pre-construction testing on the WWTP expansion in 2021.

118. But for Defendants' negligent removal of the waste materials during the 1980s remediation, Plaintiff would not have had to remove contamination from soil area on its property not associated with the soils around the WWTP pipes and structures.

119. But for Defendants' failure to remove the wastes from the soils on Plaintiff's property, Plaintiff would not have incurred additional construction costs and construction time.

## XI. COUNT 7: PUBLIC NUISANCE

120. Paragraphs 1 through 119 are realleged and incorporated herein by reference.

121. Defendants have unreasonably interfered with a right common to the general public to clean water and land.

122. As a result of this unreasonable interference, Plaintiff has incurred increased costs to treat the water during construction of the new WWTP.

123. Also as a result of the wastes in the ground, Plaintiff incurred remediation costs to remove and dispose of the waste-containing soil.

124. Also as a result, its construction project was delayed and Plaintiff incurred increased construction costs.

2884964.1/56598

## XII. COUNT 8: PRIVATE NUISANCE

125. Paragraphs 1 through 124 are realleged and incorporated herein by reference.

126. Defendants' conduct has invaded the Township's interest in the private use and enjoyment of its land.

127. As a result of this invasion, Plaintiff has incurred increased costs to treat the water during construction of the new WWTP.

128. As a result of this invasion, Plaintiff incurred remediation costs to remove and dispose of the waste-containing soil.

129. Also as a result, its construction project was delayed and Plaintiff incurred increased construction costs.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Bristol Township, respectfully requests that this Court:

A. Award the Plaintiff, Bristol Township, a judgment against Defendant, pursuant to Sections 107(a) and 113 of CERCLA, and Sections 507 and 705 of HSCA for response costs incurred and to be incurred by Plaintiff in connection with the Site, plus any accrued interest on the costs;

B. Award the Plaintiff, Bristol Township, a judgment against Defendant for damages related to incurring remediation costs and increased construction costs;

C. Declare that the groundwater and soil contamination is a public nuisance and require Defendants to abate the same; and

D. Grant such other and further relief as the Court deems just and proper.

                CURTIN & HEEFNER LLP

Date: <u>March 22, 2023</u>        By: _____
                Mark L. Freed, Esq.
                PA ID No. 63860
                Curtin & Heefner LLP
                Doylestown Commerce Center
                2005 S. Easton Road, Suite 100
                Doylestown, PA 18901
                Tel. (267) 898-0570
                mlf@curtinheefner.com

2884964.1/56598